IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS LAWSON,<br><br>      Plaintiff,<br><br> v.<br><br>JEFFERSON CAPITAL SYSTEMS, LLC,<br><br>      Defendant. | CIVIL ACTION<br>NO. 23-5124 |

**OPINION**

**Slomsky, J.**                                                                                   **August 13, 2024**

**I.     INTRODUCTION**

On December 26, 2023, Plaintiff Thomas Lawson ("Plaintiff") initiated this case against Defendant Jefferson Capital Systems, LLC ("Defendant" or "JCAP"), alleging Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et. seq. (Doc. No. 1.) Plaintiff alleges that he telephoned Defendant and disputed a debt of $903.48,[1] and that Defendant failed to communicate the dispute to the consumer reporting agencies in violation of FDCPA.[2] (See Doc. No. 8 at ¶¶ 11-13.) On February 7, 2024, Defendant filed a Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff did not

---

[1] Plaintiff's factual allegations refer to a disputed debt of $903. (Doc. No. 8 at ¶ 11.) However, the transcript of the telephone conversation noted infra demonstrates the debt is precisely $903.48. (See Docs. No. 8 at ¶ 11; 10 at 3.)

[2] On December 26, 2023, Plaintiff filed his original Complaint. (Doc. No. 1.) On January 23, 2024, Defendant filed the Motion to Dismiss the Complaint for failure to state a claim. (Doc. No. 6.) Two days later, Plaintiff filed an Amended Complaint (Doc. No. 8) which remains the operative Complaint in this case. It contains the same claims as alleged in the original Complaint. (Doc. No. 1.) On January 30, 2024, this Court denied Defendant's first Motion to Dismiss (Doc. No. 6) without prejudice as moot. (Doc. No. 9.)

sufficiently plead facts to support his disputed debt.  (See Doc. No. 10 at 3.)  On February 15, 2024, Plaintiff filed a Response in Opposition.  (Doc. No. 11.)

Before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint.  (Doc. No. 10.)  For the reasons stated below, Defendant's Motion to Dismiss will be denied.

## II. BACKGROUND

Under the FDCPA, Defendant Jefferson Capital Systems is a debt collector.  Defendant was referred by Fortiva Credit Card a debt for collection allegedly owed by Plaintiff.  On or about November 7, 2023, Plaintiff reviewed his credit report on "Experian," a platform which permits online users to view their credit report and credit information, including outstanding balances.  (See Doc. No. 1 at 5.)  In Plaintiff's Experian Report, Plaintiff noted a tradeline[3] from Defendant amounting to $903.  (See id.)  The original creditor of Defendant's tradeline to Plaintiff was Fortiva Credit Card; thus, the $903 was owed to Fortiva Credit Card.  (See Doc. No. 8 at ¶¶ 8-14.)  That same day, Plaintiff telephoned Defendant, sought information, and disputed the balance of the alleged debt.  (See id.)  The conversation between Plaintiff and Defendant consisted of the following:

> [00:05:59] Okay. Thank you so much for confirming all the details. So what? You know, this is an attempt to collect the debt. And any information obtained will be used for that purpose. This account is for the Fortiva credit card. Current balance is $903.48. So are you looking forward to pay the account?
>
> [00:06:17] Um, no, I was so basically I was just calling because I seen an account reporting on my credit report, and, uh, I just wanted to double check and verify everything, but the balance seems to be a little off. But I'm calling to know who the creditor name is.
>
> [00:06:36] So the original creditor is Fortiva credit card from the Bank of Missouri.
>
> [00:06:41] Okay. Thank you for that information. That's all I needed.

---

[3] A tradeline is a record of credit activity that has been extended to the borrower and reported to a credit reporting agency.

(Doc. No. 1 at 8.)

On or about December 26, 2023, Plaintiff alleges that he "re-checked his credit report and observed that Defendant failed to communicate that the debt was disputed to the consumer reporting agencies." (Doc. No. 8 at 3.) Plaintiff avers that "Defendant's publishing of such inaccurate and incomplete information has severely damaged the personal and credit reputation of Plaintiff and caused severe humiliation, emotional distress, mental anguish, and FICO Scores." (Id.)

Plaintiff's claim arises under § 1692e(8) of the FDCPA, which states in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> > (8) communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that disputed debt is disputed.

§ 1692e(8). Thus, to state a claim under § 1692e(8), Plaintiff must have "disputed" the debt at issue. See id.

In the Motion to Dismiss, Defendant contends that Plaintiff did not appropriately dispute the debt during the telephone conversation. (Doc. No. 10-1 at 5-6.) Defendant states that "[i]t is beyond doubt from Plaintiff's own document that he did not dispute the Fortiva debt JCAP was attempting to collect from him." (Id.) For example, Defendant notes that Plaintiff stated in the telephone call "I just wanted to double check and verify everything, but the balance seems to be a little off. But I'm calling to know who the creditor is." (Id. at 5.) Defendant argues that this statement was insufficient to dispute the debt because "he never stated that he did not owe money to Fortiva credit card." (See id.) Thus, Defendant argues that Plaintiff has failed to state a claim under §1692(e)(8).

3

**III.    STANDARD OF REVIEW**

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating

whether all of the elements identified in part one of the inquiry are sufficiently alleged." <u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Iqbal</u>, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>

**IV.    ANALYSIS**

To state a claim under the FDCPA, a plaintiff must allege "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." <u>Douglass v. Convergent Outsourcing</u>, No. 13-3588, 765 F.3d 299, 303, 303 (3d Cir. 2014). Elements (1) to (3) are not in dispute. Regarding element (4), Plaintiff's claim arises under § 1692e(8) of the FDCPA, which provides in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>> (8) communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that disputed debt is disputed.

§ 1692e(8).

whether all of the elements identified in part one of the inquiry are sufficiently alleged." <u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Iqbal</u>, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>

**IV.    ANALYSIS**

To state a claim under the FDCPA, a plaintiff must allege "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." <u>Douglass v. Convergent Outsourcing</u>, No. 13-3588, 765 F.3d 299, 303, 303 (3d Cir. 2014). Elements (1) to (3) are not in dispute. Regarding element (4), Plaintiff's claim arises under § 1692e(8) of the FDCPA, which provides in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>> (8) communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that disputed debt is disputed.

§ 1692e(8).

In Riccio v. Sentry Credit, Inc., the Third Circuit Court of Appeals held that a consumer plaintiff alleging a claim under Section 1692(g)(a)(3) may dispute a debt orally. 954 F.3d 582, 587 (3d Cir. 2020). When "reading the statutory text with fresh eyes," the court opined that the "provision refers only to 'disputes,' without specifying oral or written." Id. The court also noted that "generally, the word [dispute] fairly encompasses both forms of communication." Id. (citing Dispute, Oxford English Dictionary, 2d ed. 1989) ("To discuss, debate, or argue (a question) . . . to call in question or contest the validity or accuracy of a statement . . ."). The court also noted that the FDCPA must be read as a whole, and Section 1692e(8) also "discuss 'dispute[s] without specifying a method of communication.'" Id. The court concluded that "Section 1692g(a)(3)'s plain meaning permits a debtor to dispute a debt orally." Id. at 588 (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)) ("when a 'statute's language is plain, the sole function of the courts'—at least where the disposition required by the text is not absurd— 'is to enforce it according to its terms.'").

Here, Plaintiff's claim arises under Section 1692e(8), rather than 1692g(a)(3). However, the reasoning of the Third Circuit in Riccio is equally applicable in the instant case. Just as the plain language of Section 1692g(a)(3) uses the word "dispute" without reference to an oral or written communication, so too does the plain language of Section 1692e(8) fail to distinguish whether a dispute must be made orally or in writing. Thus, reading the FDPCA as a whole, as the court did in Riccio, this Court finds that the plain meaning of the statute permits a debtor to dispute a debt orally under Section 1692e(8).

In this regard, and viewing the allegations in the Complaint in the light most favorable to Plaintiff, he has sufficiently alleged that he disputed his debt, and that the disputed debt was not communicated to the relevant consumer reporting agencies in violation of the FDCPA. On a

telephone call that took place on November 7, 2023, with Defendant, Plaintiff stated as follows to the operator: "I was just calling because I seen an account reporting on my credit report, and, uh, I just wanted to double check and verify everything, but the balance seems to be a little off. But I'm calling to know who the creditor name is." (Doc. No. 1 at 8.)  Again, viewing the facts in the light most favorable to Plaintiff, when he stated "the balance seems to be a little off," he was disputing the debt, or "call[ing] in[to] question or contest[ing] the validity or accuracy of a statement."  See Riccio, 954 F.3d at 587.  While this dispute language is not the strongest way in which to dispute a debt, it is sufficient at the motion to dismiss stage of a case.  Thus, based upon the plain meaning of the word "dispute" as used in the FDPCA, Plaintiff called into question the accuracy of the statement he received from Experian and orally reported that dispute to Defendant. Because Plaintiff has sufficiently alleged that Defendant "fail[ed] to communicate that disputed debt [was] disputed" to the relevant consumer reporting agencies, Defendant's Motion to Dismiss will be denied.

### V.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. No. 10) will be denied. An appropriate Order follows.